IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00616-PAB-KAS

EDWARD HOID,

    Plaintiff,

v.

BOULDER COUNTY SHERIFF'S OFFICE,

    Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Plaintiff's **Motion to Amend the Complaint** [#56][1] (the "Motion"). Defendant filed a Response [#58] in opposition to the Motion [#56]. Plaintiff did not file a Reply, although he filed two Notices of Supplemental Exhibits [#59, #61].[2] The Motion [#56] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#57]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that the Motion [#56] be **DENIED**.

---

[1] "[#56]" is an example of the convention the Court uses to identify the docket number assigned to a specific filing by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court finds that the Notices of Supplemental Exhibits [#59, #61] are immaterial to the resolution of Motion [#56]. The Notices of Supplemental Exhibits [#59, #61] provide neither support for Plaintiff's claims that Defendant maintained a policy or custom responsible for violations of his constitutional rights nor support for Plaintiff's claims of discrimination by reason of his disability. *See generally Notices of Supplemental Exhibits* [#56, #61]. Accordingly, the Court does not address them further.

## I. Background[3]

Plaintiff proceeds in this matter as a pro se litigant.[4] He filed this lawsuit on March 8, 2023. *Compl.* [#1]. In the Second Amended Complaint [#17], he asserted six claims of alleged mistreatment in connection with his status as a diabetic pertaining to his time at the Boulder County Jail as a pretrial detainee. *See generally Recommendation* [#47] at 2-6. On February 6, 2024, the Chief Judge accepted the undersigned's Recommendation [#47] and dismissed Plaintiff's six claims without prejudice. *Order* [#49] at 7. In the present Motion [#56], Plaintiff seeks leave to file a Third Amended Complaint [#56-1] to amend the allegations underlying his claims to survive Fed. R. Civ. P. 12(b)(6) dismissal. Defendant argues that allowing amendment would be futile because Plaintiff still has not adequately stated plausible claims for relief. *Response* [#58] at 3.

Plaintiff's proposed Third Amended Complaint [#56-1] asserts two official capacity claims against Defendant. *Third Am. Compl.* [#56-1] at 2, 25-27.[5] Plaintiff's first claim

---

[3] For the purpose of resolving the Motion [#56], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's proposed Third Amended Complaint [#56-1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff provides additional allegations or possible new claims in his briefs, the Court notes that Plaintiff may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

[4] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[5] The Court refers to the Third Amended Complaint [#56-1] by the Court's page numbering at the top of each page, not to Plaintiff's handwritten page numbering.

avers that Defendant discriminated against him because of his disability, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *Id.* at 25. Plaintiff's second claim avers that Defendant was deliberately indifferent to his serious medical needs, in violation of the Fourteenth Amendment.[6] *Id.* at 26. Both of Plaintiff's claims are based on the following allegations.

Plaintiff alleges that, on March 2, 2023, he notified a deputy "that [he] needed a dose of insulin." *Id.* at 12. Plaintiff asserts that the deputy did not contact medical personnel in response to this request. *Id.* After he was initially denied insulin, Plaintiff alleges that he repeatedly requested an insulin dose every thirty minutes until he received a dose just after midnight on March 3, 2023. *Id.* at 12, 14. Defendant purportedly recorded in Plaintiff's medical records that Plaintiff received the dose on time. *Id.* at 14. Plaintiff alleges that he received his next dose at the normal time, and, as a result, Plaintiff was given too much insulin and suffered serious symptoms, including "black[ing] out and collaps[ing] and str[iking] [his] head on concrete." *Id.* at 14-15.

Additionally, Plaintiff alleges that he was threatened and confined to his cell for "acting funny." *Id.* at 14. According to Plaintiff, such behavior was caused by the excess of insulin in his bloodstream. *Id.* On March 4, 2023, Plaintiff alleges that he begged seven deputies to alert medical staff of his symptoms, stemming from the excess insulin, but all seven deputies refused. *Id.* at 15. The deputies allegedly accused Plaintiff of "crying wolf." *Id.* at 16. Plaintiff states that the deputies were following the customs and policies of the

---

[6] Plaintiff was a pretrial detainee at the time of the events underlying this lawsuit. *Third Am. Compl.* [#56-1] at 9-10. The Fourteenth Amendment's protections, not the Eighth Amendment's, apply to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

3

jail when they denied him medical treatment. *Id.* at 15. Plaintiff further alleges that, in April 2023, the jail deputies were "weening [him] off of insulin."[7] *Id.* at 16.

Plaintiff's allegations are similar to those in the Second Amended Complaint [#17]. *Compare Second Am. Compl.* [#17], *with Third Am. Compl.* [#56-1]. However, Plaintiff removed the individual capacity and assault claims against Defendant. *Second Am. Compl.* [#17] at 3, 8-9; *Third Am. Compl.* [#56-1] at 2. Plaintiff also omitted his claims regarding Defendant's confiscation of his medically necessary snacks on April 23, 2023. *Second Am. Compl.* [#17] at 5.

## II. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Rule 15 "provide[s] the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Denying leave to amend is generally justified only when there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

---

[7] Plaintiff does not provide further information regarding this allegation.

4

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. v. Moody's Inv.'s Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). In making a futility assessment, the Court must accept as true the allegations in the proposed amended complaint and construe the allegations in the light most favorable to the plaintiff. *Bennett v. Wells Fargo Home Mortg.*, No. 16-cv-03185-CMA-KLM, 2017 WL 4675524, at *1 (D. Colo. Oct. 18, 2017). Ambiguities must be resolved in favor of the plaintiff, and the plaintiff must be given "the benefit of every reasonable inference drawn from the well-pleaded facts and allegations." *Id.* (internal quotation marks and citation omitted).

### III. Analysis

Defendant argues that "amending the complaint is futile because [Plaintiff] cannot plead facts sufficient to state a plausible claim for relief." *Response* [#58] at 3. Defendant asserts that, "despite notice of pleading defects that caused the [Second Amended] Complaint's [#17] dismissal, [Plaintiff] does not allege new facts that would cure them." *Id.*

**A.    Municipal Liability**

Plaintiff alleges that "the practice and policy of the Boulder County Sheriff's Office, is that a jail deputy does 30 minute walks and is the proposed means of assessing persons or medical needs." *Third Am. Compl.* [#56-1] at 12. Plaintiff argues that this policy

5

"enabled and promoted deputies to weaponize the powerful drug, insulin." *Id.* at 26.[8] Additionally, Plaintiff notes that in July 2023, he was diagnosed with Type I diabetes through a blood test. *Id.* at 7.[9] Plaintiff alleges that, "had [Plaintiff] been allowed access to a physician or a nurse; programs and services; the same simple blood test would have revealed Type I diabetes," and thus, "the Boulder County Sheriff's Office's policies and staff obstructed [Plaintiff] from diagnosis of deadly disease."[10] *Id.* at 22.

A municipality "is a 'person' subject to § 1983 liability." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). "Municipal liability requires an underlying constitutional violation." *Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023). "A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington County*, 983 F.3d 1166, 1191 (10th Cir. 2020). However, "[b]ecause municipalities act through officers, ordinarily there will be a municipal violation only where an individual officer commits a constitutional violation." *Id.*

---

[8] Plaintiff also asserts that jail deputies "are trained [to] and practice disregarding the known dangers people are placed in, without any means of alerting first responders in case of emergency." *Third Am. Compl.* [#56-1] at 26. However, Plaintiff does not further develop this assertion. To prevail on a failure to properly train claim, a plaintiff must show that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Porter v. Daggett County*, 587 F. Supp. 3d 1105, 1120 (D. Utah 2022) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013)). Because Plaintiff does not provide any factual details to support the conclusion that Defendant improperly trained its employees, the Court finds that Plaintiff has failed to state a claim regarding inadequate training against Defendant.

[9] Plaintiff had previously been diagnosed as a diabetic, but Plaintiff had not been diagnosed as Type I. *Third Am. Compl.* [#56-1] at 9-10.

[10] Plaintiff neither identifies any programs and services nor alleges that Defendant denied him from participating in any specific program.

In addition to alleging adequately a constitutional violation, a plaintiff must satisfy three elements to proceed on a municipal liability claim: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Regarding the first element, an official policy or custom may include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

Regarding the second element, i.e., causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotation marks omitted). The policy or custom must be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 400 (1997).

Regarding the third element, "[a] local government policymaker is deliberately indifferent when he 'deliberately' or 'consciously' fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). "In the municipal liability context, deliberate indifference is an objective standard

7

that may be satisfied if the risk is so obvious that the official should have known of it." *Buchanan*, 2023 WL 6997404, at *8 (internal quotation marks omitted) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998)).

Plaintiff does not plausibly allege that the 30-minute check-in policy "promoted deputies to weaponize" insulin. *Third Am. Compl.* [#56-1] at 26. Other allegations belie that conclusory allegation. Specifically, Plaintiff states that Sergeant Jager "advise[d] his entire staff that [Plaintiff's] request" was real and that if Plaintiff "requested medical [care], they were to alert medical." *Id.* at 19-20. Sergeant Jager's advisement undercuts Plaintiff's claim that such policy was promoting or encouraging denial of insulin to inmates.

Additionally, Plaintiff fails to sufficiently allege that the policy was a "direct causal link" to the violation of his rights. *See Waller*, 932 F.3d at 1284 ("After establishing a municipal policy or custom, a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'") (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). While the policy enabled deputies to check on inmates and alert medical personnel in case of emergency, the policy did not authorize deputies to deny Plaintiff of his needed medical treatment. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989) (noting that when a policy is facially constitutional, a city would not be "automatically liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner").

Moreover, as in Plaintiff's Second Amended Complaint [#17], none of the allegations in Plaintiff's Third Amended Complaint [#56-1] "sufficiently demonstrate that the actions of [Defendant's] employees were undertaken pursuant to a policy of deliberate indifference." *Order* [#49] at 7. Accordingly, the Court does not find that the alleged policy

8

is the "moving force" behind the violations of Plaintiff's rights. *See Brown*, 520 U.S. at 400.

To the extent that Plaintiff alleges that Defendant maintained a custom of denying or delaying insulin to diabetic inmates, Plaintiff's allegation is insufficient. To show the existence of a custom, a plaintiff's allegations must demonstrate that the purported custom was widespread, permanent, and well-settled. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1190 (10th Cir. 2010). Plaintiff alleges misconduct on March 2-4, 2023, and vaguely alleges misconduct in April 2023. Third Am. Compl. [#56-1] at 14-16. However, "[a] plaintiff cannot rely only on [his] individual treatment to establish policy or custom, even if [he] is treated on multiple days by different defendants. . . . [A] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involved several employees of the municipality." *Est. of Dixon v. Bd. of Cnty. Comm'rs of Crowley Cnty.*, No. 15-cv-02727-NYW, 2017 WL 1407038, at *12 (D. Colo. Apr. 18, 2017) (citation omitted). Significantly, Plaintiff admits that "no other Type I diabetics were being treated the way [he] was." Third Am. Compl. [#56-1] at 23. Additionally, Plaintiff's conclusory statements that Defendant's policies have recently "taken young lives" does not amount to a plausible allegation that such a policy or custom has affected other inmates as Plaintiff asserts. *Id.* at 11; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,] . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal quotation marks and citation omitted).

9

Regarding Plaintiff's assertion that Defendant's policies obstructed him from receiving a Type I diabetes diagnosis, the Court previously explained that "none of the claims presented by Plaintiff involve whether he should have been given a blood test to determine whether he had a different type of diabetes." *Recommendation* [#47] at 14. Plaintiff fails to allege any additional facts that support the conclusion that Defendant denied Plaintiff a blood test or proper diagnosis of his illness. *See Third Am. Compl.* [#56-1]. Additionally, Plaintiff fails to point to a specific policy of Defendant's which denied him a proper diagnosis. *Id.* The Type I diagnosis received by Plaintiff in July 2023, after he was out of Defendant's custody, does not support a claim that Defendant violated Plaintiff's constitutional rights. *Third Am. Compl.* [#56-1] at 7.

Overall, the Court finds that Plaintiff fails to state a claim for municipal liability, and thus, amendment of the complaint would be futile. Accordingly, the Court **recommends** that the Motion [#56] be **denied** with respect to Plaintiff's municipal liability claim.

**B.    ADA, 42 U.S.C. § 12101, *et seq*.**

Plaintiff alleges that "the Boulder County Sheriff's Office refuses ADA accommodations which they are obligated to provide by law." *Id.* at 26. Specifically, Plaintiff asserts that Defendant "must install emergency call boxes in the cells they confine people in 18 plus hours a day." *Id.* Plaintiff alleges that Defendant acted "by reason of his disability" when threatening him and locking him in his cell for "acting funny." *Id.* at 14.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Tenth Circuit Court of Appeals has explicitly

held that this provision covers discrimination against inmates detained in a county jail. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citing *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). A public entity such as a county jail must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). To state a claim under Title II of the ADA, a plaintiff must allege that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson*, 500 F.3d at 1193.

As previously explained in the Recommendation [#47], Plaintiff's assertion that Defendant "must install emergency call boxes in the cells they confine people in 18 plus hours a day" does not demonstrate a denial of accommodation because Plaintiff fails to allege that he requested call boxes be placed in cells or that the need was "obvious." *Recommendation* [#47] at 17; *Third Am. Compl.* [#56-1] at 26. Because Plaintiff has not alleged any additional facts that would cure the prior deficiency of this claim, the Court finds that Plaintiff's ADA violation claim regarding the lack of call boxes fails.

The Court also finds that Plaintiff's assertion that the deputies acted by reason of his disability when threatening him and locking him in his cell for "acting funny" does not amount to an ADA violation. *Third Am. Compl.* [#56-1] at 14. As previously noted in the Recommendation [#47], Plaintiff's argument appears akin to the one rejected by the Tenth Circuit Court of Appeals in *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1296 (10th Cir. 2016). *Recommendation* [#47] at 16. The *J.V.* court noted that "a student's conduct

11

may be regulated, so long as action is not taken by reason of the student's disability." *J.V.*, 812 F.3d at 1296. Thus, even if Plaintiff's disruptive actions were due to the untimely insulin dose, no authority suggests that Defendant could not regulate Plaintiff's behavior because it was a manifestation of Plaintiff's disability.

Finally, to the extent Plaintiff argues that the delay of the insulin injection on March 2, 2023, amounts to a violation of the ADA, Plaintiff's argument fails. *Third Am. Compl.* [#56-1] at 12, 14. Plaintiff's claim asserts one instance where his insulin injection was delayed. *Id.* However, Plaintiff does not provide any allegations supporting the conclusion that this delay was because he was disabled, aside from the general conclusory statement that it was "by reason of [his] disability." *Id.* at 25. Plaintiff's previous failure to present "support for the contention that [his] alleged mistreatment, while detained, was due to him having type 1 diabetes" is not cured in his Third Amended Complaint [#56-1]. *Order* [#49] at 7. Additionally, "the ADA does not provide a remedy for medical negligence." *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012) (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F. 3d 1134, 1144 (10th Cir. 2005)). Therefore, the Court finds that Plaintiff has failed to state a claim under the ADA, and thus, amendment of the complaint would be futile. Accordingly, the Court **recommends** that the Motion [#56] be **denied** with respect to Plaintiff's ADA claim.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#56] be **DENIED**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that,

"within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 7, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge